**IN THE COURT OF APPEALS OF IOWA**

No. 22-0964
Filed August 17, 2022

**IN THE INTEREST OF K.H.,**
**Minor Child,**

**J.I., Father,**
    **Appellant.**
_____

Appeal from the Iowa District Court for Clay County, Andrew Smith, District

Associate Judge.

A father appeals the termination of his parental rights to one child.

**AFFIRMED.**

Lisa K. Mazurek of Miller Miller Miller, P.C., Cherokee, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

Shannon Lee Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and

guardian ad litem for minor child.

Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

J.I. appeals the termination of his parental rights to one child, K.H. He argues the child could have been returned to his custody and, in the alternative, there should have been a six-month extension. He also maintains that termination is not in the child's best interests. Upon our de novo review, we affirm termination of his parental rights.

### I. Background Facts & Proceedings.

K.H. came to the attention of the Iowa Department of Human Services (DHS) two days after his birth in September 2020 due to ongoing agency involvement with his mother.[1] About one week after birth, K.H. was admitted to the hospital for failure to thrive, thrush, and jaundice. Due to concerns for K.H.'s physical health, the DHS obtained an ex parte removal order and initiated child-in-need-of-assistance (CINA) proceedings. K.H. was placed in foster care with his half-brother, who was previously adopted by the foster parents. K.H.'s father was initially unknown.

In December 2020, J.I. informed DHS that he may be K.H.'s father. Paternity testing confirmed this belief in March 2021, and the DHS once again began offering services to J.I. The DHS previously provided services for J.I. for about three years prior to termination of his parental rights to five children in 2012. During that case, J.I. faced allegations of domestic violence against his ex-wife and founded reports of child abuse. His children witnessed the abuse against their mother, and he struck one son with a tree branch, leaving bruises on his thigh. On

---

[1] K.H.'s mother consented to the termination of her parental rights and does not appeal.

another occasion, one of his children was struck by a car after he left three young children unsupervised. After services proved unsuccessful in reunifying father and children, the court terminated J.I.'s parental rights.

In the present case, J.I. has faced similar challenges involving his confrontational behavior, inconsistent visits, and unwillingness to implement feedback. At a permanency hearing in September 2021, the court granted a six-month extension to work towards reunification. By the termination hearing in May 2022, J.I. had still not progressed to overnight visits with K.H. One reason for the lack of progression was J.I.'s failure to execute many of the requested changes around his home. Rather than install a safety knob on his stove, J.I. turned the breaker off for each visit. Rather than clean up rooms with hazardous items, J.I. installed doors that did not fit and screwed them shut. Rather than install safety mechanisms on kitchen cabinets, J.I. emptied the cabinets. When confronted about hazardous construction items around the home during a visit, J.I. stated they were not an issue because he was watching K.H. J.I. has also failed to clean up and ensure safe spaces outside of the home, as photographs depicted hazardous debris and equipment scattered amidst K.H.'s toys.

J.I. has been inconsistent in his visitation with K.H., particularly in the final months leading up to the termination hearing. He missed one visit due to oversleeping and another because he forgot to give timely notice. When a caseworker showed up to view his home during a recent visit, J.I. ended the session two hours early, purportedly due to an emergency with his tree service business, but the caseworker was not allowed to view the home and reported no such reason at the time of the visit. J.I. has also missed or been late to several

Best Care for Better Babies visits. When in attendance, he has reportedly been nonengaged and disinterested. Upon learning of these reports, J.I. contacted supervisors to express his discontent.

J.I. has continued to demonstrate confrontational and intimidating behavior. A report from J.I.'s visit just weeks before the termination hearing indicates that he appeared agitated and spoke over the caseworker and that the caseworker "left the visit concerned about [J.I.]'s ability to remain calm with [K.H.]." Her reports also indicate that J.I. is rough when changing K.H.'s diapers and that K.H. appears frightened. When J.I. believed a car seat was improperly installed in a caseworker's vehicle, J.I. took photographs of the car seat to two police stations and a fire station but obtained no affirmation of his opinion.

J.I. has not demonstrated an understanding of age-appropriate expectations. For example, he has repeatedly told his infant son to put his shoes on and fasten them and wanted to start toilet training before K.H. was walking confidently. A caseworker's summary for the month prior to the termination hearing reports, "[J.I.] has stated he knows what he is doing for his son and will continue to do what he wants when [K.H.] is with him. . . . [J.I.] was taught the skills needed to appropriately handle [K.H.]'s behaviors but refuses to use the skills taught."

After a hearing in May 2022, the court terminated J.I.'s parental rights. J.I. filed a timely appeal.

## II. Review.

Our review of termination proceedings is de novo. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "We will uphold an order terminating parental rights

where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted). We give weight to the juvenile court's fact findings, especially those about witness credibility, although they are not binding. *See* Iowa R. App. P. 6.904(3)(g); *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

### III. Discussion.

The principal concern in termination proceedings is the child's best interests. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Here, the juvenile court found the State proved by clear and convincing evidence that termination of the father's parental rights was appropriate under paragraphs (g) and (h) of Iowa Code section 232.116(1) (2022). We may affirm if the record supports termination on any one ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We confine our analysis to section 232.116(1)(h).

The court may terminate under section 232.116(1)(h) if it finds:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The fourth element alone is in dispute: whether the child could be returned to the parent's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d

703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing"). However, J.I. contends that even if his son could not be returned at the time of the termination hearing, another six-month extension was warranted to work towards reunification. He also maintains that termination was in error because it was not in K.H.'s best interests. We address each argument in turn.

### A. Whether the child could be returned to the parent's care.

We agree with the juvenile court that K.H. could not be returned to his father's care at the time of the termination hearing. While he has made some progress towards the permanency goals outlined by the DHS, improvements have been insufficient to demonstrate that he can meet K.H.'s long-term needs. He has demonstrated a consistent unwillingness to accept constructive feedback and direction. Rather than implement the recommended safety measures around his home, J.I. has chosen short-term solutions that largely rely on his insistence that K.H. is never more than two feet away from him. He has denied caseworkers access to his home and defied their directions not to take K.H. to his home until a walk-through could be completed. According to his mental-health-evaluation report, J.I. omitted important details about his history of abuse. Therefore, we cannot say that his attendance reflects a meaningful effort to participate in mental-health therapy. As the district court observed:

> The reports in this case reflect multiple incidents of [J.I.] becoming agitated and aggressive and engaging in intimidating behavior. [J.I.] believes he is being treated unfairly and the negative comments within the reports are due to others not liking him. The Court finds the reports to be more credible than [J.I.]'s denials.

Moreover, J.I. has failed to progress beyond semi-supervised visits with his son. *See In re C.N.*, No. 19-1961, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("Without this necessary progression [from supervised to unsupervised visits], we cannot say the children could have returned to the [parent's] care."). At the time of the termination hearing, K.H. was approximately twenty months old but had never been placed with his father. J.I. contends that he was denied the ability to show growth because he was not involved in the case at the time of K.H.'s removal. Even so, the statutory window was satisfied because one year passed from the time paternity was established until the petition for termination was filed. *See* Iowa Code § 232.116(1)(h)(3); *In re J.E.*, 907 N.W.2d 544, 547 (Iowa Ct. App. 2017) (finding "[p]hysical removal from the mother is sufficient to start the statutory timelines counting toward termination as to either parent"). Based on our review of the record, we find K.H. could not be placed in his father's care at the time of the hearing. We conclude there is clear and convincing evidence that grounds for termination of J.I.'s parental rights under Iowa Code section 232.116(1)(h) have been satisfied.

### B. Whether a six-month extension was warranted.

The father maintains that a six-month extension would have provided him sufficient time to resolve the issues preventing reunification with his son. Iowa Code section 232.104(2)(b) authorizes extending a child's placement for an additional six months if the court identifies "specific factors, conditions, or expected behavioral changes" that provide a basis for determining "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Here, the father's history simply does not support giving him

more time to address the cited issues. The present concerns are strikingly similar to those identified in the 2012 order terminating parental rights to five other children:

> [T]he Court is struck by the failure of [J.I.] to cooperate with the [DHS] and to assist himself in becoming a better parent. His position has been clear that he needs no help and that he is an adequate parent without any additional instruction or education in regard to his parental qualifications.

"While we recognize the law requires a 'full measure of patience with troubled parents who attempt to remedy a lack of parenting skills,'" this patience is built into the six-month statutory scheme set forth in Iowa Code section 232.116(1)(h). *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000) (quoting *In re D.A. Jr.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993)). "Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). Yet, J.I. insisted at the termination hearing that improvements would come later:

> Q. You've been told about this for at least three months, but you're going to do it on the break during the termination of parental rights hearing? A. Yes.
> . . . .
> Q. Would you agree with me that your record for visits the last two months leading up to this hearing has not been ideal? A. Yes.
> Q. But we're supposed to think that if you're given additional time or [K.H.] is placed with you something will just change? A. Oh, it will change. It will change immediately.

Although we commend the father's intention to change, we remain unconvinced that his shortcomings will be resolved within six months. Therefore, we affirm the juvenile court's decision to deny an extension.

*C. Whether termination is in the child's best interests.*

To evaluate the child's best interests, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Here, the father's inability to recognize the issues highlighted by the DHS as legitimate concerns supports termination. In light of his history, we are not inclined to believe that his behavior will improve sufficiently in a reasonable time. *See A.B.*, 815 N.W.2d at 778 ("Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." (citation omitted)).

Furthermore, the child is in a stable placement with his foster family, which is a long-term option, and has been able to bond with his half-sibling, who was adopted by this family. *See* Iowa Code § 232.116(2)(b); *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting a child's favorable integration into a foster placement supports finding termination is in the child's best interests). While we lament the separation of a child from his parent at any age, we recognize the need for permanency and stability in K.H.'s life weigh in favor of termination. *See In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) ("[I]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)). Accordingly, we conclude termination of his father's parental rights is in K.H.'s best interests.

*IV. Disposition.*

Having concluded K.H. cannot presently be returned to his father's care, a six-month extension should not be granted, and termination is in the child's best interests, we affirm termination of his father's parental rights.

**AFFIRMED.**