2007 ND 143

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**David KUNZE, Defendant and Appellant.**

No. 20060377.

Supreme Court of North Dakota.

Aug. 30, 2007.

Brandi Sasse Russell, Assistant State's Attorney, Bismarck, for plaintiff and appellee.

Todd A. Schwarz, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] David Kunze appealed from a criminal judgment entered after a jury found him guilty of the offense of assaulting a correctional officer. Kunze argues his constitutional right to a fair and impartial trial was violated when the district court ordered that he should be physically restrained with handcuffs and a waist restraining belt during his jury trial. We conclude the district court did not abuse its discretion when it ordered that Kunze be restrained in this manner during his jury trial and we affirm.

I

[¶ 2] The State charged Kunze with assaulting a correctional officer after an incident which occurred at the North Dakota

State Penitentiary on August 12, 2005. Kunze was an inmate confined in a single-person cell in the administrative segregation unit at the penitentiary. At about 1:00 p.m. that day, four correctional officers conducted a shakedown of Kunze's cell. During the shakedown, the officers found and confiscated two religious magazines in his possession that belonged to another inmate, which was a violation of penitentiary policy. Kunze became angry and upset. A scuffle occurred, and Officer James Sayler suffered an injury to his hand which drew blood. According to the State, Kunze became verbally abusive, lunged at the officer, and bit his hand. Kunze denied that he assaulted the officer.

[¶ 3] Prior to trial, the State requested that Kunze be physically restrained during his trial. The district court considered the State's request at a hearing on the morning of Kunze's jury trial. The State argued restraints were justified for several reasons. The State emphasized the nature of the charge against Kunze, which involved committing a violent act against a correctional officer. The State also pointed to Kunze's history of assaults and escapes from custody. The State presented the district court with the following information about Kunze's record:

The record consists of basically back to '64 a number of assaults. He has an escape in '64, number of burglaries, an escape in 1970, possession of a firearm in 1972, another escape after conviction in 1981, many more counts of burglary. Another escape in 1991, '92 escape. He has many escapes and burglaries and counts of theft.

Basically, he does pose a flight risk based on the number of escapes he has. But also the records that I received from the penitentiary as far as the amount of assaults and different nature of—the violent nature he has at the penitentiary, is just a catalog of basically write-ups and violations of threatened staff, assaulted staff. It is—there is just several—several violations of that type of behavior.

The State also informed the court that Kunze had a record of "probably more than 50 violations of threats and assaults to guards and to [sic] just making threats to other individuals in the penitentiary."

[¶ 4] Furthermore, the State argued restraints were justified because of the manner in which Kunze was handled by law enforcement officers during transport and at the penitentiary. The State called Deputy Brad Banker to testify about his experience transporting Kunze. Deputy Banker stated that he had transported Kunze three times, and all three times Kunze was restrained using leg irons and belly chains. During one of these transports, Kunze was further restrained with shackles to two D-rings on the floor and wall of the transport van. Deputy Banker recounted this was the first time he had transported a defendant that way in his twenty-nine years of employment. When the State asked why Kunze was handled that way, Deputy Banker responded, "Basically, because of the information we've received from the penitentiary, his past records on escapes. His assaultive—alleged assaultive behavior towards guards. And they will not move Mr. Kunze or let him out of the penitentiary unless he is shackled that way."

[¶ 5] According to Deputy Banker, Kunze was always moved with at least three officers, two to hold him and one to act as a "chase person." He stated Kunze was in administrative segregation at the penitentiary and had no contact with anybody else because of his behavior. Deputy Banker requested that Kunze be restrained with belly chains and leg irons "for safety for the Court, the people and

Mr. Kunze." On cross-examination, Deputy Banker stated that Kunze had not been violent during the three times he transported Kunze. He also testified that Kunze did not cause any problems when he was unshackled in order to change into civilian clothing for his trial.

[¶ 6] In response to the State's evidence, Kunze argued he should not be restrained because it would tell the jury that the trial was a "foregone conclusion." Kunze claimed he had every incentive not to get violent in the courtroom because that would result in another charge. Kunze's counsel stated that the defendant had assured him there would be no problems. Kunze also spoke on his own behalf and claimed that he never attacked or threatened anybody at the penitentiary.

[¶ 7] After considering the evidence and the parties' arguments, the district court granted the State's request to restrain Kunze during his jury trial. The district court had the following exchange with Kunze and Deputy Banker as it announced its ruling:

> THE COURT: It is the order of the Court in this matter that the leg restraints I'll cause to be removed, but the hand restraints and the waist retaining [sic] belt will be continued. Is there any reason why that cannot be facilitated so—
>
> THE DEFENDANT KUNZE: Why don't you leave the leg restraints on so I can write. I got to be able to participate in the trial.
>
> THE COURT: You'll be able to write. You'll have a tablet and you'll have a pen. Any reason that cannot be accomplished?
>
> DEPUTY BANKER: No, we can do that.
>
> THE COURT: And the restraints for the hands of the defendant will be in place, the restraining belt underneath

the sweater so to as to minimize the appearance of the same.

The district court did not provide any other reasoning for its decision to restrain Kunze with handcuffs and a waist restraining belt.

[¶ 8] After a brief ten-minute recess, Kunze's jury trial began. The State presented testimony from the four correctional officers involved in the incident with Kunze. Officer James Sayler testified Kunze became very upset and starting yelling obscenities when the magazines were confiscated. According to Officer Sayler, Kunze started to come at him aggressively, so he began pushing Kunze back into his cell, with his hands on Kunze's shoulder and chest. At that point, Officer Sayler claimed, Kunze turned his head, grazed Officer Sayler's hand with his teeth, and kicked Officer Sayler in the leg. Officer Sayler testified Kunze's bite broke the skin and drew blood on his two middle knuckles.

[¶ 9] The testimony of the three other officers generally supported Officer Sayler's version of events. Officer Shawn Fode stated that he saw Kunze's teeth going toward Officer Sayler's hand, but that he did not see the actual tearing of the skin. Officer Jason Brazell testified he saw Kunze's head come down toward Officer Sayler's hand in a lunging motion. Officer Patrick Ross recounted that he saw Kunze bite the top of Officer Sayler's hand and kick his leg.

[¶ 10] After the State rested its case, Kunze presented evidence in his defense. He called James Charles Thompson III, who was an inmate in the penitentiary at the time of the incident, to contradict the officers' testimony. Thompson testified he was in a nearby cell and witnessed part of the scuffle. According to Thompson, Kunze did not have his false teeth in his

mouth on either the top or the bottom when he allegedly bit Officer Sayler. He stated the officers began roughing Kunze up while he was still handcuffed to the bars outside his cell. However, he could not see into Kunze's cell so he had no direct knowledge about whether Kunze bit or kicked Officer Sayler.

[¶ 11] Additionally, Kunze testified on his own behalf. Kunze claimed that he never resisted going back into the cell, and that Officer Sayler shoved him back towards it. When Officer Sayler put his hands near Kunze's face, Kunze raised his cuffed hands to block him. At that point, Officer Sayler pulled his hands back, and the officers slammed the door. Kunze claimed that he did not have his teeth in at the time of the scuffle, and that the marks on Officer Sayler's hand could have occurred when Kunze raised his cuffed hands to defend himself.

[¶ 12] After considering the evidence, the jury convicted Kunze of the offense of assaulting a correctional officer.

## II

[¶ 13] Kunze argues his constitutional right to a fair and impartial trial was violated when the district court required him to be physically restrained with handcuffs and a waist restraining belt during his jury trial.

[¶ 14] We review a district court's decision about whether to physically restrain a defendant during court proceedings for an abuse of discretion. *See In re R.W.S.*, 2007 ND 37, ¶ 1, 728 N.W.2d 326; *see also Deck v. Missouri*, 544 U.S. 622, 629, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005); *United States v. Mahasin*, 442 F.3d 687, 691 (8th Cir.2006). A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or

misapplies the law. *Meier v. Said*, 2007 ND 18, ¶ 20, 726 N.W.2d 852.

[¶ 15] This Court recently considered the use of physical restraints in the courtroom in *In re R.W.S.*, 2007 ND 37, 728 N.W.2d 326. Although *In re R.W.S.* involved a juvenile who was tried before the court, *see id.* at ¶ 2, rather than a criminal defendant tried before a jury as was Kunze, some of the principles articulated in that case are applicable here. In *In re R.W.S.*, we relied heavily on the United States Supreme Court's decision in *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). *See In re R.W.S.*, at ¶¶ 11–14, 16. In *Deck*, the United States Supreme Court held that the Federal Constitution generally prohibits the use of visible shackles on a convicted offender during the penalty phase of a capital case, "*unless* that use is justified by an essential state interest—such as the interest in courtroom security—specific to the defendant on trial." 544 U.S. at 624, 125 S.Ct. 2007 (internal quotation omitted). In reaching this holding, the Court extensively discussed the use of physical restraints during the guilt phase of a criminal jury trial. *See id.* at 626–32, 125 S.Ct. 2007.

[¶ 16] Courts have long recognized that criminal defendants should not be physically restrained as a routine matter because of the prejudicial effect of such restraints. *See id.* at 626–28, 125 S.Ct. 2007 (examining the historical development of the law regarding shackling). There is "inherent prejudice to the accused when he is cast in the jury's eyes as a dangerous, untrustworthy and pernicious individual from the very start of the trial." *Kennedy v. Cardwell*, 487 F.2d 101, 111 (6th Cir.1973). "[T]he sight of a defendant in shackles could instill in the jury a belief that the defendant is a dangerous individual who cannot be controlled, an idea that could be devastating to his defense."

*Roche v. Davis,* 291 F.3d 473, 482–83 (7th Cir.2002) (internal quotation omitted). In *Deck,* the United States Supreme Court noted that "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process." 544 U.S. at 630, 125 S.Ct. 2007.

[¶ 17] The Fifth and Fourteenth Amendments, which guarantee due process of law, "prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id.* at 629, 125 S.Ct. 2007. Thus, while a criminal defendant has a constitutional right to be free of visible restraints during the guilt phase of a jury trial, that right is not absolute. *Id.* at 628, 633. "[T]he right may be overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum." *In re R.W.S.,* 2007 ND 37, ¶ 11, 728 N.W.2d 326 (quoting *Deck,* 544 U.S. at 628, 125 S.Ct. 2007).

[¶ 18] Because visible restraints have a prejudicial effect, due process does not permit their use "if the trial court has not taken account of the circumstances of the particular case." *Deck,* 544 U.S. at 632, 125 S.Ct. 2007. Therefore, trial courts must make a case-specific determination about restraining the defendant, taking into account special circumstances and particular concerns related to the defendant on trial, such as special security needs or escape risks. *In re R.W.S.,* 2007 ND 37, ¶ 16, 728 N.W.2d 326 (citing *Deck,* at 633, 125 S.Ct. 2007). Courts should consider the accused's record and temperament, the desperateness of the accused's situation, the security situation at the courtroom and courthouse, the accused's physical condition, and whether there is an adequate means of providing security that is less prejudicial. *In re R.W.S.,* at ¶ 18.

In cases where physical restraints have been approved, "there has been evidence of disruptive courtroom behavior, attempts to escape from custody, assaults or attempted assaults while in custody, or a pattern of defiant behavior toward corrections officials and judicial authorities." *Gonzalez v. Pliler,* 341 F.3d 897, 900 (9th Cir.2003) (internal quotation omitted).

[¶ 19] When the district court concludes that restraints are necessary, the court must take steps to limit their prejudicial effect. *United States v. Zuber,* 118 F.3d 101, 103 (2d Cir.1997). The district court "must impose no greater restraints than are necessary." *Hameed v. Mann,* 57 F.3d 217, 222 (2d Cir.1995); *see also Gonzalez,* 341 F.3d at 900 (requiring the district court to "pursue less restrictive alternatives before imposing physical restraints"); *United States v. Durham,* 287 F.3d 1297, 1304 (11th Cir.2002) (noting that reviewing courts look to see whether the district court considered "less restrictive, less prejudicial methods of restraint"); *Kennedy,* 487 F.2d at 111 (stating that "it is an abuse of discretion precipitously to employ shackles when less drastic security measures will adequately and reasonably suffice").

[¶ 20] If there is a dispute as to the record on which the district court will make its determination, the court should be willing to receive evidence. *Hameed,* 57 F.3d at 222. An evidentiary hearing may be necessary if there is a factual dispute over the need for the restraints or their visibility to the jury. *See Durham,* 287 F.3d at 1306 n. 8. The Ninth Circuit has stressed the importance of presenting evidence on the record:

> [W]hen the imposition of restraints is to be based upon conduct of the defendant that occurred outside the presence of the court, sufficient evidence of that con-

duct must be presented on the record so that the court may make its own determination of the nature and seriousness of the conduct and whether there is a manifest need for such restraints; the court may not simply rely upon the judgment of law enforcement or court security officers or the unsubstantiated comments of others.

*Gonzalez,* 341 F.3d at 902 (quoting *People v. Mar,* 28 Cal.4th 1201, 124 Cal.Rptr.2d 161, 52 P.3d 95, 107 (2002)). The district court is not required to conduct an evidentiary hearing in every case. However, "the physical indicia of innocence are so essential to a fair trial that the better practice is to hold a hearing so that factual disputes may be resolved and evidence of the facts surrounding the decision are made a part of the record." *Kennedy,* 487 F.2d at 107.

[¶ 21]  At a minimum, the district court must articulate its reasons for placing the defendant in physical restraints on the record in order to provide for meaningful appellate review. *See United States v. Joseph,* 333 F.3d 587, 591 (5th Cir.2003); *Durham,* 287 F.3d at 1304; *United States v. Apodaca,* 843 F.2d 421, 431 (10th Cir.1988); *Kennedy,* 487 F.2d at 107. The district court should also consider on the record whether less restrictive, less prejudicial methods of restraint could be used. *See Durham,* at 1304, 1308. But explicit findings may not always be necessary, *United States v. Stewart,* 20 F.3d 911, 915 n. 8 (8th Cir.1994), and a district court's failure to provide its reasons for restraining a defendant is erroneous but is not reversible error when the reasons are readily apparent from the record. *United States v. Fields,* 483 F.3d 313, 357 (5th Cir.2007).

[¶ 22]  In this case, the district court held a hearing just prior to Kunze's jury trial to consider the State's request for restraints. The State verbally provided the court with information about Kunze's prior history of assaults and escapes, and Deputy Banker testified about the three times he had transported Kunze. At the conclusion of the hearing, the district court ordered that Kunze be restrained with handcuffs and a waist restraining belt, but not leg restraints. Kunze asked if he could instead wear leg restraints so he could write and participate in the trial. The district court responded that he would be able to write. The district court then ordered that the waist restraining belt be placed underneath Kunze's sweater to minimize its appearance.

[¶ 23]  While the district court did not elaborate on the record its reasons for its order, the reasons for restraints or other security measures are readily apparent from the record and the district court attempted to minimize the prejudice of the waist restraining belt by placing it under Kunze's clothing. Furthermore, at the time of trial *In re R.W.S.* was not yet decided. Trial was held on September 20, 2006, and *In re R.W.S.* was decided on March 5, 2007. The district court did not have our analysis in *In re R.W.S.* or our recitation of pertinent factors to be used when determining whether physical restraints could be used during the guilt phase of trial. Notwithstanding that the *In re R.W.S.* decision was not available for guidance, the district court's acknowledgment that Kunze could not be physically restrained as a matter of routine is evidenced by the fact a hearing was held and inquiry was made into whether restraints would be permitted.

[¶ 24]  In cases ordering restraints decided by the district court after our decision in *In re R.W.S.,* the district court is to make case-specific findings and explain on the record, and at greater length than in this case, its rationale for

the order even in those instances in which the district court believes the reasons are readily apparent on the record. That explanation should include the reason for not accommodating a request for one type of restraint rather than the other when the reason is not obvious on the record.

### III

[¶ 25]   Because the record before us in this case contains sufficient facts and rationale for us to understand the district court's order and the reasons for it and because those reasons are sufficient to impose the ordered restraints, we affirm the criminal judgment.

[¶ 26] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.