Filed 5/14/13 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2013 ND 68

In the Interest of Robert R. Hoff

Pamela A. Nesvig,

Assistant State’s Attorney, Petitioner and Appellee

v.

Robert R. Hoff, Respondent and Appellant

No. 20120248

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Bruce A. Romanick, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Kapsner, Justice.

Pamela A. Nesvig, Assistant State’s Attorney, Courthouse, P.O. Box 5518, Bismarck, ND 58506-5518, petitioner and appellee; submitted on brief.

Gregory I. Runge, 1983 East Capitol Avenue, Bismarck, ND 58501, for respondent and appellant; submitted on brief.

Interest of Hoff

No. 20120248

Kapsner, Justice.

[¶1] Robert R. Hoff appeals from an order denying his petition for discharge from civil commitment as a sexually dangerous individual.  We hold the district court abused its discretion by not independently making an individualized determination on the record whether it was necessary to restrain Hoff during the hearing, and its failure to do so was not harmless error.  We reverse and remand.

I

[¶2] Hoff, who is currently 38 years old, has been in trouble with the law for much of his life.  In 1990, when he was 16 years old, Hoff was charged with gross sexual imposition resulting from an incident involving a 10-year-old girl, and he was sent to Home on the Range.  The record contains evidence of other sex crimes where the victims declined to press charges.  Hoff has also been convicted of four counts of delivering alcohol to minors and criminal trespass stemming from incidents involving an ex-girlfriend.  In 2004, Hoff was convicted of gross sexual imposition, and he was given a suspended sentence and placed on probation.  Hoff’s probation was later revoked after he violated several conditions of probation, including that he not have unsupervised contact with minors.  Hoff has been committed to the North Dakota State Hospital in Jamestown as a sexually dangerous individual since 2006.

[¶3] In September 2011, Hoff petitioned for discharge from civil commitment, and a hearing on the petition was held in Bismarck in March 2012.  Hoff arrived in the courtroom wearing restraints consisting of handcuffs tethered to his waist and an ankle chain.  At the beginning of the hearing, Hoff’s attorney made a request to the district court:

MR. RUNGE:  I have one request of the Court, that is that my client have the shackles, the handcuffs, removed so he can participate in his defense.

THE COURT:  Well, is there a reason?

MR. RUNGE:  Yeah.  He can’t write.

THE COURT:  What do you mean he can’t write?

MR. RUNGE:  He’s—

THE COURT:  I see what he’s got, but the problem is the sheriff makes the determination whether or not they can be secured while they’re here.  I don’t have a deputy.

MR. RUNGE: This is denial of his due process if he cannot communicate with his attorney.  And oral communication does not suffice when I have to listen to—

THE COURT:  Let’s get one thing straight.  I’m not going to have him asking questions.

MR. RUNGE:  He’s not going to.

THE COURT:  I understand, but it won’t be—not the first time just because somebody writes a question he gets asked.

MR. RUNGE:  No, he’s going to be writing comments on paper for me to possibly look at.

THE COURT:  Well, I understand.  Sue, I don’t know if you—

DETENTION OFFICER: Not my call, Your Honor.  The sheriff said no.  They have to stay on.

THE COURT:  Okay.  Then until—what I’m going to say is no, Mr. Runge.

MR. RUNGE:  I’m going to object.

THE COURT:  Beforehand—you can object, that’s fine.

MR. RUNGE:  I would like to have a reason for the denial.

THE COURT: Well, number one, he’s in custody.  He’s been transported 90 miles to here.  I rely on them to determine to tell me whether or not he may be a danger.  Sheriff’s indicated he needs to remain in cuffs.

MR. RUNGE:  But there is no indication that he’s a danger.  Nobody said he’s a danger.

THE COURT:  Nobody said he’s a danger.  Well, he has been convicted of two felonies, minimum.  That’s what got him here to begin with.

MR. RUNGE:  This is a civil case.

THE COURT:  It is a civil case, but he stays in custody.  He gets transported.  He doesn’t get released to walk around.  He’s in custody even though it’s a civil case.  I’m going to deny it.

MR. RUNGE:  In any criminal case, even in murder cases the client is not—

THE COURT:  If I have a jury sitting there.  I know where Mr. Hoff is. I know that he’s incarcerated and I’m the guy that makes the decision in this case.  So if for some reason he can’t—if you have a pen, you have a pad, he should be able to write on his lap if he needs to put some things on there.

MR. RUNGE:  Your Honor, as far as I can see, he can’t do that.

THE COURT:  Well, I haven’t seen you give him a pen or give him a pad of paper.

MR. RUNGE:  I’m going to do that right now.

THE COURT:  All right. Looks like he will be able to function, so we’ll go along.  All right.  Anything else, Mr. Runge?

MR. RUNGE:  Nothing further, Your Honor.

 

[¶4] Two witnesses testified at the hearing.  Robert Riedel, Ph.D., testified on Hoff’s behalf, and Robert Lisota, Ph.D., testified on the State’s behalf.  Written expert evaluations of Hoff by the witnesses were also submitted in evidence.  Following the hearing, the district court found Hoff continued to be a sexually dangerous individual and denied the petition for discharge:

Hoff was civilly committed by Court order on January 11, 2006, under 25-03.3 NDCC.  Hoff has previously waived discharge hearings. Hoff did request and have a discharge hearing in 2009 and the Court issued an Order for Continued Treatment.  Dr. Riedel was the independent examiner in 2009 and [opined] then as he does now that Hoff does not meet the criteria for SDI [sexually dangerous individual].  Dr. Riedel finds Hoff only meets one of the criteria required for SDI.  This is the same diagnosis Dr. Riedel presented to the Court in 2009 and Hoff was found by the Court to continue to be a sexually dangerous individual.

At the time of Hoff’s commitment in 2006, he was diagnosed with antisocial personality disorder, with a high degree of psychopathy, which provided a basis to believe Hoff would likely engage in future acts of sexual predatory conduct and would likely experience serious difficulty controlling his behavior.  Dr. Lisota’s diagnosis presently mirrors the findings in 2006 and in 2009.  Hoff up until the present time has failed to actively and successfully participate in sex offender treatment programs, which could, if successfully completed, allow the respondent to be placed in a less restrictive setting.  Hoff is presently participating in the treatment program offered.  This is a change from Hoff’s previous lack of participation as he had previously not participated in treatment.  Dr. Lisota testified Hoff is in treatment, but cautioned Hoff is at the same point of his treatment now as when this current review period began.  Dr. Lisota also stated Hoff has had 17 behavior warnings, which creates problems with his ability to successfully move forward in his treatment.  Hoff has not completed treatment and has not progressed in his treatment beyond the initial stage.

From the evidence presented at the hearing of this matter and the reports filed with the Court, the Court finds the following:

1) Hoff’s diagnosis of antisocial personality disorder, with a high degree of psychopathy providing a continued basis to believe Hoff is likely to engage in further acts of sexual predatory conduct remains and Hoff has failed to successfully complete a sex offender treatment program.

2) Up until the start of this most recent review period, Hoff has refused to actively and successfully participate in a sex offender treatment, which might if successfully completed, allow Hoff to be placed in a less restrictive setting.

3) Hoff is now participating in sex offender treatment, but has not progressed beyond the initial treatment due to his inability to follow the behavioral rules.

4) Dr. R[ie]del’s position is the same position he provided to the Court in 2009.  Basically, Dr. R[ie]del argues Hoff does not qualify and has never qualified as an SDI under 25-03.3 NDCC.  Dr. R[ie]del’s report was not persuasive in 2009 and this Court finds Dr. R[ie]del’s current report unpersuasive.

5) The Court finds by clear and convincing evidence Hoff continues to be a sexually dangerous individual under the provisions of Chapter 25-03.3, NDCC.

II

[¶5] Hoff argues the district court erred in refusing to allow removal of his restraints during the petition for discharge hearing.  Hoff contends this resulted in a violation of his due process rights “by denying him the opportunity in assisting his attorney in his own defense.”

[¶6] “We review a district court’s decision whether to use physical restraints during court proceedings for an abuse of discretion.”  
State v. Aguero
, 2010 ND 210, ¶ 8, 791 N.W.2d 1 (citing 
State v. Kunze
, 2007 ND 143, ¶ 14, 738 N.W.2d 472).  “A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination.”  
Aguero
, at ¶ 8 (citing 
Kunze
, at ¶ 14).

[¶7] In 
Deck v. Missouri
, 544 U.S. 622, 624 (2005), the United States Supreme Court held that due process prohibits the use of visible shackles on a convicted offender during the penalty phase of a capital case unless the use is justified by an “essential state interest” that is “specific to the defendant on trial.”  The Supreme Court identified three legal principles behind the longstanding judicial hostility to shackling:  (1) physical restraints visible to a jury undermine the presumption of innocence; (2) shackles can interfere with the defendant’s ability to participate in his own defense; and (3) judges must seek to maintain a dignified judicial process.  
Id.
 at 630-31.  The Supreme Court said the “essential state interests” that justify the use of physical restraints include “physical security, escape prevention, or courtroom decorum.”  
Id.
 at 628 (citations omitted).  The Supreme Court held “the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial.”  
Id.
 at 629.

[¶8] In 
Interest of R.W.S.
, 2007 ND 37, 728 N.W.2d 326, we faced the question of whether restraints could be applied in a juvenile delinquency proceeding, which is akin to a criminal proceeding.  In 
R.W.S.
, the child was handcuffed for the duration of the hearing.  
Id.
 at ¶ 2.  After the child requested that the handcuffs be removed, the juvenile court referee refused because the referee had been informed by the presiding judge to not interfere with the sheriff’s office’s determination of security matters.  
Id.
  We held that: (1) it was an abuse of discretion for the referee to fail to independently decide whether the child’s handcuffs should be removed, and (2) some, but not all, of the principles announced in 
Deck
 applied.  We are now faced with the issue of the use of restraints in the context of the deprivation of liberty in an involuntary commitment proceeding.

[¶9] Courts that have examined the use of restraints in the context of involuntary commitment proceedings have come to similar conclusions that this Court did in 
R.W.S.
  
Matter of T.J.F.
, 2011 MT 28, 248 P.3d 804; 
Interest of F.C. III
, 607 Pa. 45, 2 A.3d 1201; 
In re Mark P.
, 402 Ill. App.3d 173, 932 N.E.2d 481.  There must be an individualized determination on the record that restraints are necessary and restraints should not exceed what the particular situation requires.  
T.J.F.
, at ¶ 28; 
F.C. III
, at 80-82; 
Mark P.
, at 178.

[¶10] The commitment of a sexually dangerous individual is a civil proceeding, but the deprivation of liberty resulting from an adverse conclusion is in many ways worse than that of a criminal proceeding because the period of commitment is indefinite.  Hoff was convicted of gross sexual imposition in 2004, for which he originally received a suspended sentence and he has completed his criminal punishment.  He was committed under N.D.C.C. ch. 25-03.3 in 2006.  The period of this confinement is unknown.

[¶11] The three fundamental legal principles that militate against the routine use of restraints in a criminal trial are analogous to those that operate
 
in a civil commitment hearing under N.D.C.C. ch. 25-03.3:  (1) the respondent is entitled to his or her liberty unless the State proves by clear and convincing evidence that the respondent is or remains a sexually dangerous individual; (2) N.D.C.C. § 25-03.3-09(1), in order to help the respondent secure a meaningful defense, provides the respondent with a right to counsel and restraints can interfere with the ability to communicate with counsel; and (3) judges must seek to maintain a judicial process that is a dignified process which includes the respectful treatment of respondents, reflects the importance of the matter at issue, and the gravity with which Americans consider any deprivation of an individual’s liberty.  
See
 
R.W.S.
, 2007 ND 37, ¶ 13, 728 N.W.2d 326.

[¶12] In 
R.W.S.
, we held that a request to remove restraints during a juvenile court hearing on delinquency required the court to consider:  “the accused’s record, temperament, and the desperateness of his situation; the security situation at the courtroom and courthouse; the accused’s physical condition; and whether there was an adequate means of providing security that was less prejudicial.”  2007 ND 37, ¶ 18, 728 N.W.2d 326 (citing 
Lakin v. Stine
, 431 F.3d 959, 964 (6th Cir. 2005).  We held the juvenile court abused its discretion in failing to make findings under these factors to support its decision not to remove the restraints.

[¶13] When Hoff’s counsel requested that Hoff’s restraints be removed, at a minimum, the court was required to engage in the analysis set out in 
R.W.S.
, 2007 ND 37, ¶ 18, 728 N.W.2d 326.  The court failed to make any findings under the 
R.W.S.
 factors, but deferred to the sheriff to “make[] the determination whether or not they can be secured while they’re here.  I don’t have a deputy.”

[¶14] The court agreed with counsel’s assertion that there was no present indication of danger:  “Nobody said he’s a danger.  Well, he has been convicted of two felonies, minimum.”  However, the most recent was in 2004 for which he had first received a suspended sentence which was later revoked.  If the existence of prior convictions were sufficient to shackle civil committees, then virtually all would appear in shackles because N.D.C.C. ch. 25-03.3 requires that committed individuals have previously engaged in “sexually predatory conduct.”  N.D.C.C. § 25-03.3-01(9).  This would eliminate the individualized determination required for physical restraints.  
Deck
, 544 U.S. at 624; 
R.W.S.
, 2007 ND 37, ¶ 12, 728 N.W.2d 326.

[¶15] “The United States Supreme Court, in 
Deck
, also held that the constitutional requirement to be free from physical restraints is not absolute.  The trial court, in the exercise of its discretion, may take account of special circumstances that call for restraints.”  
R.W.S.
, 2007 ND 37, ¶ 16, 728 N.W.2d 326 (citation omitted).  We  note that this case involves restraining a single individual before the court.  Situations in which multiple individuals are brought before a court may give rise to legitimate reasons for restraining individuals that are not applicable to situations like this one.  
See
 
United States v. Howard
, 480 F.3d 1005, 1012-14 (9th Cir. 2007) (affirming district’s shackling policy for proceedings with multiple defendants in large courtroom with understaffed security and heightened risk of “conflict, violence, or escape”).  “But any such determination must be case specific; that is to say, it should reflect particular concerns, say, special security needs or escape risks, related to the defendant.”  
R.W.S.
, at ¶ 16 (citation omitted).

[¶16] There is no suggestion on this record that Hoff presented a security risk.  The burden is on the State to establish the need to use restraints, 
see
 
Daniel v. State
, 2003 WY 132, ¶ 12, 78 P.3d 205, but the State offered no justification other than the determination of the sheriff.  The experts’ reports were filed with the court prior to the hearing.  Dr. Lisota’s report contained no reference to an act of violence directed at persons or property at the State Hospital during the period it covered.  The content of Dr. Lisota’s report from the therapy notes referring to the resident’s behavior warnings of Hoff is as follows:

Date

Data

Source

1/22/11

In shower past allowed time, has been warned before.

RBW

1/31/11

Disrespect of staff.

RBW

3/03/11

Operated television with no points.

RBW

3/04/11

Breaking group confidentiality.

RBW

3/16/11

Propped room door open, has been warned not to do this.

RBW

4/15/11

Staff opened door in gym to get basketballs, left 2-way (radio) on window sill. ? saw radio and handed it to staff.  In possession of unauthorized NDSH property, NDSH 2-way radio.

RBW

8/09/11

Using the word “cunt” when told it was inappropriate and rude and repeated it again.

RBW

8/21/11

Violated unit food policy eating breakfast in the dayroom.

RBW

8/31/11

Door was opened slightly when staff did room check.  Staff closed door.  Resident came out while staff was present and opened door so it was slightly open.  When he thought staff were not watching.  All residents were warned about this in community on 8/30/11.

RBW

[¶17] Likewise, the report of the independent examiner, Dr. Riedel, was submitted to the court in advance of the hearing.  As in Dr. Lisota’s report, there is no indication of any violence at the State Hospital.  Rather, Dr. Riedel states:  “I believe his aggression has been channeled verbally through sarcasm and put-downs rather than physically.”  “His aggressiveness has been limited to verbal aggression and passive-

aggressive activity, which ironically is usually not self-serving but damaging . . . .”  “He has shown poorly managed anger in the past but much of his anger is directed in sarcastic responses and withdrawing cooperation.”

[¶18] There are no findings by the court how this pre-hearing information would lead the court to exercise its discretion to restrain Hoff.  Without an individualized determination of the need for restraints, the use of handcuffs in the courtroom for a civil commitment proceeding inserts another punitive aspect to the process.  Such use  fails, without adequate consideration of the need to do otherwise, to offer the respondent the dignified process fully reflective of the gravity of the possible deprivation of liberty.

[¶19] Under 
R.W.S.
, the district court’s error in failing to exercise its discretion to independently decide whether to remove Hoff’s restraints is subjected to the harmless error test.  
R.W.S.
, 2007 ND 37, ¶ 19, 728 N.W.2d 326.  “Federal constitutional errors do not automatically require reversal if it is shown that they were harmless, but before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.”  
Id.
 (citation and quotation omitted).  “In declaring this belief, the court must be convinced the error did not contribute to the verdict,” and “the burden is on the beneficiary of a constitutional error to prove the error is harmless beyond a reasonable doubt.”  
Id.
 (citation and quotation omitted).  In 
R.W.S.
, we held the use of restraints was harmless error because there was “overwhelming evidence” of the child’s guilt.  
Id.
 at ¶ 1.  On this record, it cannot be said that the error was harmless.  Hoff’s continuing commitment is based upon expert testimony and the experts do not agree.  However, the experts 
do
 agree that Hoff has no sexual deviancy.  Neither expert diagnoses Hoff with a sexual deviancy under Axis I.  Chapter 25-03.3, N.D.C.C., is designed to deal with sexually dangerous predators.  Where no sexual deviancy exists, courts should proceed with caution.

[¶20] The expert opinions do not agree which personality disorders apply to Hoff based upon his clinical and criminal history.

[¶21] The expert opinions are in part based on actuarial risk assessment instruments with divergent results.  More importantly, both experts’ reports and testimony make clear the professional use and acceptance of these risk assessment instruments and their various iterations are in flux.  Therefore, their application to any one individual has to be carefully scrutinized.  In light of the documented challenges between the experts’ reports on the use of the various instruments, it was not harmless error to accept Dr. Lisota’s report over Dr. Riedel’s.

III

[¶22] We conclude the district court abused its discretion by not independently making an individualized determination on the record that restraints were needed, and its failure to do so was not harmless error.  We reverse and remand.  On remand, the district court must consider on the record the factors established in 
R.W.S.
, 2007 ND 37, ¶ 18, 728 N.W.2d 326, to determine if it is necessary to restrain Hoff.  If the court determines restraints are not necessary, it must conduct a new hearing free of restraints.

[¶23] We reverse the order and remand for further proceedings consistent with this opinion.

[¶24] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

I concur in the result.

Gerald W. VandeWalle, C.J.

Sandstrom, Justice, dissenting.

[¶25] I am concerned that the majority takes a reasonable principle to an illogical extreme which may stretch an already over-extended law enforcement and endanger those in the courtroom and the courthouse.

[¶26] The United States Supreme Court has recognized the concern that jurors may be influenced by seeing defendants restrained, just as courts have been concerned that jurors may be influenced by other extraneous information.  On the other hand, we have long recognized the ability of judges—professional fact-finders—to exclude the extraneous.  Here the majority apparently thinks our judges cannot exclude a party’s restraints from their professional decision-making.  If the majority does not think this, then the rule it announces here is a pyrrhic victory for the absurd.  I reject the idea that North Dakota’s judges are incapable of excluding the extraneous factor of whether a party is restrained in some way.

[¶27] This Court recently told the legislature our courts are overburdened.  Now the majority would add a constitutionally unnecessary requirement of an additional hearing to decide whether a party needs to have restraints for another hearing or proceeding.  This Court and the legislature have recognized how law enforcement is overburdened in this state, yet the majority would unnecessarily impose a greater burden on law enforcement when there is no jury to be influenced by extraneous factors.

[¶28] As for this case, the majority finds its own facts while asserting “[t]here is no suggestion on this record that Hoff presented a security risk.”  But there is such information in the record.  The judge was told the sheriff believed Hoff needed to be restrained.  The majority, which apparently believes the judge could not exclude from his decision-making the extraneous factor of Hoff’s restraints, says the judge should hear otherwise extraneous information—perhaps intelligence information, perhaps highly prejudicial bad-conduct information—to decide whether restraints are appropriate.  Further, the majority ignores the district court’s finding that Hoff was able to write and communicate with his lawyer.

[¶29] Out of the hundreds of cases interpreting 
Deck v. Missouri
, 544 U.S. 622, 629 (2005), the majority is unable to cite any case in the United States holding as it does to extend 
Deck
 to non-jury commitment of sexually dangerous individuals.  Other courts have refused to extend 
Deck
.  In 
United States v. Zuber
, 118 F.3d 101, 102 (2nd Cir. 1997), the United States Court of Appeals for the Second Circuit ruled, “We hold that the rule that courts may not permit a party to a jury trial to appear in court in physical restraints without first conducting an independent evaluation of the need for these restraints does not apply in the context of a non-jury sentencing hearing.”

[¶30] This case of commitment of a sexually dangerous individual is a civil proceeding that follows a criminal conviction.  Recently, the Illinois Court of Appeals ruled that the 
Deck
 restrictions on restraints does not apply to post-conviction relief proceedings—a civil proceeding that follows a criminal conviction:

With postconviction proceedings, the defendants are convicted criminals seeking review of possible constitutional errors in their trials and/or sentences.  The constitutional concerns at issue in the trial and sentencing phases of criminal proceedings are not present in postconviction proceedings.  Further, the dignity of the courtroom is not demeaned by a convicted criminal’s appearance in shackles when he or she seeks review of his or her trial and/or sentence because the defendant’s guilt and sentence have already been determined.  We strongly disagree with defendant that restraints during postconviction proceedings make a mockery of postconviction proceedings, which are review proceedings after a conviction.  Moreover, for the same reason, we disagree with [
People v.] Rippatoe
[, 408 Ill. App. 3d 1061, 1066-67, 348 Ill. Dec. 825, 945 N.E.2d 132, 137 (2011),] that the dignity of the courtroom is demeaned by a pro se defendant’s representation of himself at a proceeding after his trial, especially since the defendant there did not even express an issue with the restraints at the hearing.  Additionally, our supreme court has specifically limited the [
People v.] Boose
[, 66 Ill.2d 261, 5 Ill. Dec. 832, 362 N.E.2d 303 (1977),] determination in Rule 430 to proceedings involving the determination of guilt or innocence and chose not to make a similar rule for postconviction proceedings.  
Accordingly, we find the presumption that shackling is improper until manifest need is shown and the required determination of manifest need established by Boose [a case that follows Deck] and its prodigy does not apply to postconviction proceedings
.

People v. Kelley
, 2013 IL App (4th) 110874, ¶ 25 (emphasis added).  
Kelley 
specifically considered the mental health case cited by the majority, 
In re Mark P.
, 402 Ill. App. 3d 173, 932 N.E.2d 481, and decided it did not apply to post-conviction proceedings.  The cases cited by the majority at ¶ 9 as “involuntary commitment proceedings” are, in fact, mental health and drug treatment cases.  None are commitment-of-sexually-dangerous-individual cases, and none followed convictions.

[¶31] Finally, I note that our Court defers to law enforcement—without any hearing on the question—as to whether or not an incarcerated person is transported to our Court for oral argument and whether or not that person has restraints at oral argument.  I will state here that I for one am able to make my decision on the merits, unaffected by that law enforcement decision.

[¶32] Dale V. Sandstrom